IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DON McKEE, JR., *et al.*, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 17-3403-CV-S-BP |
| ) | |
| FEDERATED MUTUAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION DENYING DEFENDANT'S MOTION TO DISMISS**

Plaintiffs initiated this suit in state court, alleging a single claim for breach of an insurance contract. Defendant Federated Mutual Insurance Company, ("Federated"), removed the case to federal court and then filed a Motion to Dismiss, contending that Plaintiffs' claim is barred by a judgment rendered and decisions made in a prior lawsuit. For the reasons set forth below, Federated's Motion to Dismiss, (Doc. 7), is **DENIED**.

**I. BACKGROUND**

This case stems, in part, from a fire at Moody Station and Grocery, ("Moody Station"), a convenience store that had been leased to Plaintiffs. Plaintiff operated the store under the name "The Big Store". Federated issued separate insurance policies to Moody Station and The Big Store.

**A. The Prior Lawsuit**

In November 2011, Federated filed an interpleader action in this Court against both Moody Station and The Big Store;[1] the case was assigned number 11-3457 and was ultimately

---

[1] The 2011 lawsuit named The Big Store as a defendant, but The Big Store is (and was) a partnership so the plaintiffs in this case – Don McKee Jr. and Jeremy McKee – were the actual parties in interest. For ease of discussion, the Court will henceforth refer to the Plaintiffs in this case as "The Big Store." Similarly, Moody Station

assigned to the undersigned. The interpleader action was based on Moody Station's insurance policy, (Policy No. 9302108, hereafter "Policy 108"), which provided coverage for the real property. (Case 11-3457, Doc. 1, ¶ 6.)[2] According to Federated's Complaint, The Big Store was not named as insured on Moody Station's policy, but Federated named The Big Store as a defendant in the interpleader action because The Big Store claimed an interest in the real property and therefore an interest in the insurance proceeds. (Case 11-3457, Doc. 1, ¶ 11.) In its Complaint, Federated acknowledged that in light of its prior payments to Moody Station it owed an additional $40,980.95 under Policy 108, but The Big Store's claim created uncertainty over who should be paid. In addition, Moody Station claimed that Federated was obligated to pay more than the additional $40,980.95. Thus, Federated's Complaint (1) sought a determination as to who was entitled to the $40,980.95 Federated admitted that it owed under Policy 108 and (2) disputed Moody Station's claim that Federated owed even more money under Policy 108.

Federated received permission to deposit $40,980.95 into the Court's registry. (Case 11-3457, Doc. 23.) On June 7, 2013, the parties entered an agreement that would (1) allow The Big Store to receive $10,879.39 out of that sum "representing the actual cash value of the contents," (2) require The Big Store to "release all legal interests in the subject real estate and any claims arising out of the Lease Contract Agreement entered into for the property," and (3) acknowledge that the sum paid to The Big Store would serve as a credit for any amounts Federated owed to Moody Station. (Case 11-3457, Doc. 41-1, p. 2.) Subsequent filings confirm that this was predominately an agreement between The Big Store and Moody Station as to how they would

---

was a sole proprietorship owned by Sonya Hubbard, but for the sake of consistency the Court will refer to Moody Station.
[2] Documents from Case 11-3457 will be designated as such; documents filed in this case will be designated by the document number without a case number. All page numbers are those generated by the Court's CM/ECF system.

divide the amount Federated admitted to owing under Policy 108, with The Big Store further disclaiming any right to any additional funds that Moody Station established was owed by Federated. (*E.g.,* Case 11-3457, Doc. 42, ¶¶ 5-8.) Also, despite the reference to the "value of the contents," the settlement appears intended to resolve any claims The Big Store had based on its purported ownership interest in the property, with Moody Station agreeing to allow The Big Store to have a portion of the money Federated acknowledged it owed to Moody Station in exchange for The Big Store surrendering its claim.

As the then-existing trial setting approached, Federated filed a motion asking the Court to take judicial notice of certain facts. In that motion it characterized its original payment of interpleaded funds as "represent[ing] the $31,101.56 [sic] remaining to be paid towards the actual cash value of the building, as well as the $10,879.39 remaining to be paid for the actual cash value of the contents . . . ." (Case 11-3457, Doc. 55, ¶ 10.) However, Federated's characterization that it originally intended any portion of its payment to compensate The Big Store for the loss of contents in the store was not accurate: (1) Federated started the lawsuit by disputing The Big Store's claim that it was insured under Policy 108 or otherwise entitled to any of the proceeds, (Case 11-3457, Doc. 1, ¶¶ 8, 11-13), (2) Federated did not agree that it was obligated by Policy 108 to pay anything to The Big Store, much less a specified amount, (Case 11-3457, Doc. 41-1), (3) the funds Federated paid were described as the amount Federated agreed was owed to Moody's Station, (Case No. 11-3457, Doc. 1, ¶ 15; Doc. 15, p. 1; and (4) Federated was at best a nominal party to the agreement between The Big Store and Moody's Station that The Big Store would receive $10,879.39.

Nonetheless, based on the agreement, the Court granted Federated's motion to take judicial notice "that of the funds deposited in the Court registry . . . The Big Store is entitled to

3

$10,879.39 for the actual cash value of the contents and . . . Moody Station is entitled to $30,101.56 for the actual cash value of the building." (Case 11-3457, Doc. 81, p. 1.) The Court ordered the Clerk of Court to make these disbursements and dismissed The Big Store. The Court then conducted a bench trial to determine whether Federated owed additional money to Moody Station under Policy 108. The Court's decision, except for the award of attorney fees, was affirmed on appeal. *Federated Mut. Ins. Co. v. Moody Station & Grocery,* 821 F.3d 973 (2016).

### B. The Current Lawsuit

As stated earlier, the Big Store brought the current lawsuit in state court, and Federated removed it to federal court based on 28 U.S.C. § 1332. The Big Store's Petition (now Complaint) alleges that it is entitled to payments under its separate policy with Federated, Policy No. 9209598 (hereafter "Policy 598). While the Complaint alleges that The Big Store is entitled to payments for the building and its contents, The Big Store now concedes this was a "clerical error" and its claim under Policy 598 is limited to the lost contents only, and further declares that it intends to amend the Complaint to clarify this point. (Doc. 12, p. 3.)

### II. DISCUSSION

Federated contends that The Big Store's claim for compensation under Policy 598 is barred by principles of claim preclusion and issue preclusion. When considering a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if it

allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g., Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013).

In making this evaluation, the Court is limited to a review of the Complaint, exhibits attached to the Complaint, and materials necessarily embraced by the Complaint. *E.g., Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697 n.4 (8th Cir. 2003). However, a Court may also consider records from other lawsuits, particularly when those proceedings relate to the matter to be resolved. *E.g., Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir. 2007); *see also Stahl v. United States Dep't of Ag.,* 327 F.3d 697, 700 (8th Cir. 2003). Finally, a case can be dismissed based on an affirmative defense if the materials that can be considered under Rule 12(b)(6) establish that the defense precludes the plaintiff's claim. *E.g., C.H. Robinson Worldwide, Inc. v. Lobrano,* 695 F.3d 758, 763-64 (8th Cir. 2012).

### A. Claim Preclusion

A judgment issued by a federal court sitting in diversity is given the same claim-preclusive effect that the courts of that state would give to their own judgments. *E.g., Lobrano,* 695 F.3d at 764 (citing *Semtek Int'l, Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 508 (2001)). The Court thus applies Missouri law to determine the preclusive effect of its prior judgment. Under Missouri law, for claim preclusion (also referred to as res judicata) to apply, "'four identities' must occur: 1) identity of the thing sued for, 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom the claim is made." *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 501 (Mo. 1991) (en banc); *see also Niere v. St. Louis County, MO,* 305 F.3d 834, 837-38 (8th Cir. 2002). The Court will focus on the first

requirement – identity of the thing sued for – because it presents the basis for the Court's decision.

The Missouri Supreme Court has described the "thing" sued for as the aggregate of facts giving rise to a right, so "the question is whether the claim arises out of the same act, *contract* or transaction." *Chesterfield Village, Inc. v. City of Chesterfield,* 64 S.W.3d 315, 318-19 (Mo. 2002) (en banc) (quotation omitted) (emphasis supplied). "The factual bases for the claims rather than the legal theories are considered for purposes of applying the res judicata doctrine." *Chadd v. City of Lake Ozark,* 326 S.W.3d 98, 102 (Mo. Ct. App. 2010). The Court must consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Kesler v. Curators of the Univ. of MO,* 516 S.W.3d 884, 891 (Mo. Ct. App. 2017) (quotation omitted).

Under this standard, the two lawsuits did not involve the same "thing," so the first identity is absent. Federated describes the suits as both involving an interest in insurance policy proceeds, (Doc. 8, p. 3; Doc. 15, p. 4), but this is an overly broad characterization. Both suits involve claims for insurance proceeds, but the suits involve different insurance policies. Federated brought the first suit to resolve its obligations under Policy 108 – and only Policy 108. Here, The Big Store seeks recovery under a different policy – Policy 598. The fact that the cases involve different insurance contracts, alone, establishes that the two lawsuits are distinct and that claim preclusion does not apply. *See Chesterfield Village,* 64 S.W.3d at 318-19 (instructing that claims are different if they arise from different contracts). The different contracts contained different terms and (according to Federated's Complaint in the first case) involved different parties. In resolving Federated's obligations under Policy 108, the parties would not have been

required to (and did not) mention Policy 598. And, to the extent that the parties' expectations are relevant, the Court notes that Federated opted to bring the first lawsuit to resolve its obligations under Policy 108 only.[3]

In a related argument, Federated contends that The Big Store was obligated to assert its claim under Policy 598 as a compulsory counterclaim pursuant to Rule 13(a). Rule 13(a)(1)(A) provides that a claim is a compulsory counterclaim if it "arises out of the transaction or occurrence that is the subject matter" of the plaintiff's claim. The preceding analysis establishes that The Big Store's claim that Federated breached Policy 598 was not a compulsory counterclaim because it did not arise out of Federated's obligations under Policy 108. The claims do not have the "logical relation," *see Tullos v. Parks,* 915 F.2d 1192, 1195 (8th Cir. 1990), necessary for the Court to conclude that, in response to Federated's suit regarding its obligations under Policy 108, The Big Store was legally required to assert a claim that Federated breached a completely different policy.[4]

Claims involving Federated's obligations under Policy 598 are distinct from Federated's obligations under Policy 108. Therefore, claims about Policy 598 did not have to be raised in the prior lawsuit, and the decision in the prior lawsuit do not preclude The Big Store's claims based on Policy 598.

---

[3] Federated has also requested that the Court order The Big Store to file an Amended Complaint because it is not clear how the claims in this case are different from the claims in the prior case. (Doc. 8, pp. 6-7.) The differences are apparent because the cases involve different policies, so Federated's request is denied.

[4] The Big Store also argues that its claim did not arise until Federated finally acted on the Big Store's claim under Policy 598, which did not occur until after Federated filed the interpleader action. (Doc. 12, p. 3; *see also* Doc. 12-1, ¶¶ 7-8; Doc. 12-5.) These facts are not contained in The Big Store's Complaint and are supported only with documents outside the pleadings, so the Court does not consider them.

## B. Issue Preclusion

Federated also contends that issue preclusion (sometimes referred to as collateral estoppel) applies, and precludes The Big Store from litigating issues that were decided in the first lawsuit. Federated does not clearly identify the issues that it believes The Big Store is barred from litigating; it appears that Federated contends that issue preclusion bars The Big Store from litigating the amount it is due for the lost contents. (*See* Doc. 8, pp. 4-5; Doc. 15, p. 6.) The Court disagrees.

As with claim preclusion, the Court must follow Missouri's law regarding issue preclusion. *See, e.g., PPW Royalty Trust by and through Petrie v. Barton,* 841 F.3d 746, 754 (8th Cir. 2016), *cert. denied,* 137 S. Ct. 1596 (2017). Under Missouri law,

> [b]efore giving preclusive effect to a prior adjudication under collateral estoppel principles, the Court must consider four factors: (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

*James v. Paul,* 49 S.W.3d 678, 682-83 (Mo. 2001) (en banc). The Court concludes that the first and second factors are not satisfied because in the first lawsuit the Court was not asked to determine – and did not determine – anything about the contents of the store at the time of the fire.[5] The Court ordered the Clerk of Court to pay The Big Store $10,879.39 out of the funds Federated acknowledged owing, but the Court did not determine that The Big Store was legally entitled to any money, much less the amount to which it was entitled. The Court ordered the

---

[5] As stated in Part II.A, the Court also did not resolve any issues about Federated's obligations to The Big Store, either generally or specifically under Policy 598.

payment to The Big Store because the parties agreed to it; therefore, the Court did not issue a decision on the merits. Similarly, the sum was not based on the Court's determination as to the value of the contents (or anything else); the sum was based solely on the parties' agreement. In short, the Court never determined that The Big Store was entitled to any portion of the $40,989.95, or that the contents were worth $10,879.39.

Federated has not identified any issues from the prior lawsuit that (1) were decided on the merits in the first lawsuit and that (2) are identical to any issues in this lawsuit. Therefore, issue preclusion provides no basis for dismissing The Big Store's Complaint in this case.

### III.  CONCLUSION

The Motion to Dismiss, (Doc. 7), is **DENIED**.

**IT IS SO ORDERED**.

DATE: January 30, 2018

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT